## J. M. BARRETT ET AL. v. C. B. METCALFE ET AL.

### No. 1477.

**Irrigation—Riparian Proprietors—Constitutional Law.**

Plaintiffs, riparian proprietors on the Concho river in the arid region, constructed an irrigation dam and complied with all the provisions of the irrigation laws (Acts of March 19, 1889, and March 29, 1893), required to give priority of rights to the water for irrigation and prevent its diversion by others for that purpose to their prejudice. Defendants, riparian proprietors above them, subsequently constructed a dam which diverted the water for irrigation of their lands to the extent of interfering with its use for the same purpose by plaintiffs to the same extent as before. Held:—

1. A riparian proprietor in the arid region of Texas has a right to the use of the water of the stream for irrigation; and may consume it, in doing so, to the extent of interfering with its use by a lower proprietor for such purpose; though not it seems to the extent of interfering with its use for domestic purposes and for stock.

2. The acts of the Legislature above named were in violation of sections 17 and 19 of article 1 of the Constitution of the State, if applied to deprive defendant of

his right to use the water for irrigation, in that they appropriated such private right to private use, or to public use without compensation.

3. This principle was not affected by the fact that the Concho was a navigable stream within the meaning of the statutes of the State with reference to locating and surveying lands. (Rev. Stats., arts. 4147, 4148.)

APPEAL from Tom Green.   Tried below before Hon. J. W. TIMMINS.

*Cochran & Hill*, for appellants.—1.   The court erred in sustaining defendants' seventh special demurrer, because the act of the Legislature of the State of Texas, approved March 19, 1889, and the act amendatory thereof, approved March 29, 1893, are valid and constitutional as to all irrigation dams and ditches situated upon navigable streams of the State, and it appearing from the allegations of plaintiff's original petition that the South Concho River, upon which plaintiff's dam, ditch and farm are situated, is a navigable stream, within the meaning of the laws of the State of Texas, and was declared by law to be such navigable stream while the title to all of the lands situated upon it was in the State, said stream was by law reserved from private ownership, and it was within the Constitutional power of the ·Legislature to prescribe how, and in what manner the waters of said stream could be diverted therefrom for the purposes of irrigation, and prescribe the conditions upon which riparian owners could acquire prior rights in the diversion and use of the waters of said stream for the purposes of irrigation. Acts 1889, p. 100; Acts 1893, p. 47; Sections 21 and 42 Acts of Congress, Republic of Texas, December 14, 1837; Laws 1837, p. 62; (Sayles' Early Laws of Texas, Vol. 1, Art. 395); Senate Journal, first session, Second Congress Republic of Texas, p. 75; Hartley's Digest, Articles 1857 and 1878; Oldham & White's Digest, Articles 1194 and 1195; Paschals' Digest, Articles 4529 and 4530; Sayles' Revised Statutes, Article 3911; Laws and Decrees of Mexico and of Coahuila and Texas, relating to colonization, Sayles' Early Laws of Texas, Vol. 1, Art. 31, Sections 4 and 6; Art. 40, Section 12; Art. 41, Section 14; Art. 47, Sections 12 and 22; Art. 58, Sections 5, 6, 7, 8, 14, 15 and 22, in which the right to the use of the waters of all streams for irrigation are recognized, and Art. 58, Section 29 and Art. 66, Section 22, in which the rule is prescribed for surveying vacant lands on running streams; City of Galveston v. Menard, 23 Texas, 395; Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170; McGehee Irrigation Co. v. Hudson, 85 Texas, 587; N. Y. & Tex. Land Co. v. Thomson, 83 Texas, 169; Railway v. Schurmeir, 7 Wall., 272; Barney v. Keokuk, 94 U. S., 324; Packer v. Bird, 137 U. S., 661; Shively v. Bowlby, 14 Sup. Ct. Rep., 548; State of Indiana v. Milk, 11 Fed. Rep., 394; 3 Kent's Com., 427; 2 Am. & Eng. Ency. Law, pages 504 and 505; Gould on Waters, Sec. 76; Tyler on Boundaries, 42 to 48; Sutherland on Stat. Con., Sections 247, 253, 291, and 333; Statutory Use of Words, Sections 378 and 386; Public Grants, Sections 229, 231; interpretation clauses, Sections 239, 240, 241; intent to be ascertained by considering entire Statute, Sec. 300;

historical and other facts related to the legislation; Collins v. Benbury (N. C.), 5 Ire. Law, 118 (42 Am. Dec., 155); Ward v. Willis (N. C.), 6 Jones Law, 183 (72 Am. Dec., 570); Lamprey v. Metcalf (Minn.), 53 N. W. Rep., 1143; Packer v. Bird (Cal.), 11 Pac. Rep., 873; Com. v. Roxbury, 75 Mass., 492; Wood v. Fowler (Kan.), 14 Coml. Law Jour., 114; Cooley v. Golden (Wis.), 23 S. W. Rep., 100; Arnold v. Mundy, 10 Am. Dec., 356, and notes, p. 385.

2. The title to all navigable streams being in the State, the Legislature had the power to prescribe how the waters thereof could be diverted and used, without providing compensation to owners of lands fronting on such streams; and the appropriation of the waters thereof in the manner prescribed by law, was not a taking of private property for private or public use within the meaning of the Constitution. Selman v. Wolfe, 27 Texas, 69; Jones v. Johnson, 6 Texas Civ. App., 262, last part of opinion, page 267; Cooley Const. Lim., pages 728 to 733; 16 Am. & Eng. Encycl. Law, pages 248 and 257; People v. Tibbetts, 19 N. Y., 523; People v. Canal Appraisers, 33 N. Y., 461; Arnold v. Munday, 10 Am. Dec., 369 and 370.

3. Appellants, by a compliance with the irrigation laws having acquired a prior right to the appropriation and use of the quantity of the waters out of the flow of said South Concho River, as determined by their survey and measurement, to-wit: 42 cubic feet per second of time, were entitled to an injunction, restraining defendants from diverting the waters thereof above plaintiffs' dam, so as to diminish the flow thereof below that quantity at plaintiffs' said dam, and to recover of defendants all damages which they had sustained by such unlawful diversion. Acts of 1889, page 100, Sections 4 and 9; Acts of 1893, page 47; Gould on Waters, Sections 236 and 543, and notes; also Sections 508 and 509; 1 High, on Injunctions, Sections 870, 875 and 877; 11 Am. & Eng. Ency. Law, page 863; Salazar v. Smart, 30 Pac. Rep., 676; Kirk v. Bartholomew, 29 Pac. Rep., 40.

*B. W. Rimes* and *Joseph Spence, Jr.,* for appellees.—1. It being conceded by appellants that the South Concho River is not a navigable stream, in fact, and the lands of appellees bordering on said stream, above appellants' dam, having been patented by the State long prior to the time that appellants' dam was constructed, and prior to the passage of the Irrigation Acts under which appellants claim their alleged prior right to the use of the water of said stream; the waters of said stream flowing on, over and across appellees' lands, by the patents granted by the State, passed absolutely to appellees; and the same were not "unappropriated waters" in which appellants could acquire any rights as against appellees, by prescription, adverse possession, or by proceeding under said Acts of March 19, 1889, and March 29, 1893; and both said acts are unconstitutional and void, because,

1. Said acts attempt to authorize the taking of private property for private use.

2.   Said acts attempt to authorize the taking of private property for public use without compensation being first made.

3.   Plaintiffs in this case seek and attempt by their sworn statement, survey and map, and other proceedings had by them under said acts of the Legislature, to take and appropriate defendants' property and property rights in the waters of said stream, where defendants' dam and ditch are located, and where the same borders upon and flows on, over and across defendants' lands, to plaintiffs' own use, and not for a public use, and without compensation; and,

4.   Said Act of March 19, 1889, attempts by its terms to declare and determine that private property in the waters of all natural streams shall be owned by the public, for public uses, without making compensation; and both said acts attempt to forfeit and appropriate, both for public and private use, the ownership of waters in natural streams flowing over lands already granted and patented by the State, in which the State reserved no right, title, or benefit, contrary to the Constitution. Sections 17 and 19, Art. II., Constitution of Texas; McGehee Ditch Co. v. Hudson, 85 Texas, 587; Gould on Waters, Sec. 103; Baker v. Brown, 55 Texas, 378; Rhodes v. Whitehead, 27 Texas, 310; Mud Creek Co. v. Vivian, 74 Texas, 170; Tolle v. Correth, 31 Texas, 363; Fleming v. Davis, 37 Texas, 173. Legislature can not affect rights of riparian owner already acquired. Allen v. Werner, 80 Wis., 531. Navigable and non-navigable stream; test of navigability; use of non-navigable stream for irrigation; grant of land in non-navigable stream extends to middle of stream. Jones v. Adams, 19 Nev., 78; Gould on Waters, Secs. 107, 108 and 109; Fulmer v. Williams, 112 Pa. St., 191; Irwin v. Brown, 12 S. W. Rep., 340 (Tenn.); Fuller v. Dauphin, 124 Ill., 542; Lamprey v. Mead, 54 Minn., 290; R. R. Co. v. Ramsey, 53 Ark., 314; City of Grand Rapids v. Powers, 89 Mich., 94; Bemond v. Sherley, 135 Ind., 547; Lamprey v. State, 52 Minn., 181; Gaston v. Mace, 33 W. Va., 14; Gould on Waters, Sec. 93; 11 Am. & Eng. Encycl. Law, pages 850 to 856, and notes, citing (among others) Elliott v. Railway, 10 Cush., 193 to 195, opinion by Shaw, C. J., and Lux v. Haggin, 69 Cal., 255 and 407.

2.   Our statute defining navigable streams prescribes only a rule how lands located by virtue of certain certificates shall be surveyed on water courses with reference to the quantity of water front that can be appropriated to each survey, and was not intended to limit the boundary line of the survey to the border or bank of the stream, or to reserve to the State any control of, right to, or benefit in the waters flowing in the bed of the stream. Sayles' Civil Statutes, Arts. 3911, 3952, 3953.

COLLARD, ASSOCIATE JUSTICE.—This is a suit by appellants, having a dam across the South Concho River and ditches constructed for the purpose of irrigating for farming purposes their farm, against the appellees to restrain the latter from the use of the water for the same purposes above appellants' dam and farm by which use the water of the stream is exhausted, rendering appellants' dam useless for irriga-

tion of their farm and the operation of their gin, depreciating the value of their farm and property, and for damages so occasioned. Appellants alleged that their dam and ditch were chartered by the State under the Act of 1875 as the Benficklin Irrigating and Manufacturing Company. The petition shows a compliance by plaintiffs with the Irrigation Act approved March 19, 1889, and the act amendatory thereof, approved March 29, 1893.

The Act of 1889 referred to, provides "that the unappropriated waters of every river or natural stream within the arid portions of the State, in which by reason of insufficient rainfall irrigation is necessary for agricultural purposes, may be diverted from its natural channel for irrigation, domestic, and other beneficial uses," provided such diversion shall not deprive any person who claims any land lying along the bank or margin of the river of the use of the water for his own domestic use.

The second section of the act declares, "that the unappropriated waters of every river or stream within the arid portion of the State are the property of the public and may be acquired by appropriation for the uses and purposes" provided for in the act.

The fourth section declares that the first appropriation in time is the first in right as to the quantity of water necessary to irrigate his land. The fifth section grants the right of appropriation to every person, corporation or association of persons that have or may construct a ditch, canal or reservoir for the purposes named, and file a sworn statement with the county clerk, showing the size of the ditch or canal, its carrying capacity in cubic feet in a second of time, the name of the stream from which the water is taken, the time when the work was commenced, the names of the owners thereof and a map showing the route of the ditch or canal.

In sections six and seven other conditions are prescribed that need not be set out. Section eight provides that by a compliance with the preceding sections of the act, the claimant's right to the use of the water shall relate back to the time when the work on the canal, ditch or reservoir commenced. Section nine provides that when any person, corporation or association of persons, by a compliance with the preceding sections, shall become entitled to the use of the waters of any river or stream, "it shall thereafter be unlawful for any other person, corporation or association of persons, except for domestic use by any one entitled thereto, to so divert the flow of water in said river or stream in such manner and to the extent of depriving said person, corporation or association of persons in priority of the use of the water to which they may be so entitled." The act also provides for the formation of corporations for irrigating purposes under its provisions, such corporations to have the right of way over all public lands, and the right of eminent domain for right of way over the lands of private persons. There are other provisions of the act that are not involved in this case. It took effect upon its passage under the emergency clause, passing the House by 69 yeas, 6 nays, and the Senate by 21 yeas and no nays. This

statute was amended by Act of March 29, 1893, requiring more particular statement to be made to be filed with the county clerk, and granting to the owners of the ditch a preference lien on crops raised by persons renting the water from the irrigating canal owners.

Plaintiffs' petition shows that their ditch and dam is in an arid district of the State; that they first appropriated the water for irrigation and complied with the Acts of 1889 and 1893, and that the Concho is a navigable stream.

The court below sustained a general demurrer and a special exception to the petition. The special exception was to the effect that both acts of the Legislature of March 19, 1889, and March 29, 1893, were contrary to the Constitution of the State, because they attempt to take from the owners property in waters of natural streams for public and private uses without first making compensation, and because they attempt to authorize the taking and appropriation of private property for private uses.

Appellants have appealed from the judgment of the court, assigning the holding of the court as error.

*Opinion.*—Neither of the Acts of 1889 or 1893 provide for any compensation to the owner for any damage to his land, irrigable by a river or stream of water, by the taking of the water therefrom under the provisions of the acts cited; and they do authorize such taking for private purposes. The acts are, in our opinion, violative of Sections 17 and 19 of the Constitution and, if applied as prayed for in the petition, they would deprive defendant of property rights without due course of law, and without compensation therefor.

The complaint in the petition against defendants is that they have constructed a dam across the stream above plaintiff's dam, and by means of a ditch leading therefrom are diverting the waters of the stream for purposes of irrigation, thereby so diminishing the flow of the stream that when it reaches plaintiffs' dam it is wholly insufficient to furnish them the quantity of water to which they are entitled under the Acts of the Legislature cited, with which they have complied, to-wit: forty-two cubic feet per second of time, as per their statement and measurement filed with the county clerk, by reason of which interference by defendants, "plaintiffs are unable to irrigate their said land, or any part thereof, or operate their said water power"—their gin.

It is our opinion that in so far as the Acts of 1889 and 1893 apply or are attempted to be applied in this suit to the property rights of the defendants in their dam, ditch, and irrigation of their lands on the South Concho River above plaintiffs' dam, they are unconstitutional. They are violative of Sections 17 and 19, Article I., of the Constitution. The application of the acts mentioned in this suit would result in the taking and appropriation of the property rights of defendants for private use without due course of law. If it be insisted that the taking intended

is for public use, the taking would be without compensation to the owners.

That the irrigable quality of land is an element of its value in this State cannot be denied, and especially is this true in the dry and arid districts. A lower proprietor cannot complain that one above uses the water of a stream for ordinary purposes, even though the water is thus exhausted. At common law such uses include all water necessary for domestic purposes, for drinking, washing, cooking, and for stock. Gould on Waters, Sections 205-208. This ordinary use at common law does not include use for purposes of irrigation. This is denominated extraordinary use. But in this State it is settled that irrigation is classed as ordinary use of the water of a flowing stream with the right in the proprietor to consume all the water of the stream reasonably necessary or required for such use. This privilege of irrigation in the riparian owner may not be extended so as to deprive the lower proprietor of water for drinking, washing, cooking purposes, or for his stock. It is probably subordinate to such use—the common law, ordinary use. Baker v. Brown, 55 Texas, 377; Rhodes v. Whitehead, 27 Texas, 309; Tolle v. Correth, 31 Texas, 363; Fleming v. Davis, 37 Texas, 173; Mud Creek Co. v. Vivian, 74 Texas, 170; McGehee Ditch Co. v. Hudson, 85 Texas, 587. Plaintiffs do not, however, charge defendants with using more water than is necessary for irrigation by them.

Justice Moore, in the case of Rhodes v. Whitehead, says: "It may be admitted that the purpose of irrigation is one of the natural uses, such as thirst of people and cattle and household purposes, which must absolutely be supplied, the appropriation of the water for this purpose would therefore afford no ground of complaint by the lower proprietors, if it were entirely consumed. And the momentum of the stream may be resorted to as a power for making it available, or it may be turned by a proprietor on his own land by a dam, or by any other means which he may find appropriate for the purpose. Yet, unless he has acquired the right of doing so by grant, liens or such adverse possession as will give him the right by prescription, he cannot do it in a manner that will unreasonably detain the water not consumed from the riparian owners below."

In the case of Tolle v. Correth it was decided that the right of irrigation was for ordinary use, and that in this State the upper proprietor could, if necessary in irrigating his land, consume all the water to the exclusion of the lower proprietor. 31 Texas, 361 and 362. A different doctrine was held in Flemming v. Davis, 37 Texas, 173, the court declaring that the common law furnished the only rule that should prevail in this State.

The case of Irrigation Co. v. Vivian, supra, was one where plaintiff sued as a corporation created under the general law for the purpose of constructing and maintaining canals for irrigation, seeking to enjoin defendants from maintaining a dam on a creek above plaintiff's works. Justice Gaines, the present Chief Justice of the Supreme Court, dis-

cussing the subject, declared the law in the following language: "If the defendants or the owners of the land along the stream in controversy had the right to use the water for the purpose of irrigating their lands, that right remained unaffected by plaintiff's incorporation, or by the legislation of the State passed for the encouragement of irrigation. It seems to be the rule of the common law that a riparian owner has no right to use the water of the stream for irrigating his land provided it interferes with the uses of the water by those who own the lands upon the stream below. That this is the proper rule in England and in those States where the rainfall is sufficient for the purposes of agriculture we freely concede, but we are of the opinion that in those sections where irrigation is necessary to the successful pursuit of farming, it should not apply. What is not a necessary use in the one case becomes necessary in the other. Evans v. Merriweather, 3 Scam. (Ill.), 496. It was so held in Tolle v. Correth, 31 Texas, 365, and though this decision was criticised in the subsequent case of Flemming v. Davis, 37 Texas, 173, we are of the opinion that it recognizes a correct rule of law as applied to the present case. We think it a matter of common knowledge that there are portions of our State where the business of agriculture cannot be successfully prosecuted through successive years except by irrigation, and it is to be inferred from the allegations of the petition that the section where the stream in controversy is situated is of that character. We think therefore that the defendants had the right to divert the water which flowed in the stream along or through their lands for the purpose of irrigating them, although the effect of such use was to leave the plaintiff corporation an insufficient supply for the same purpose. Whether they had the right to divert the whole of it and leave an insufficient supply for the ordinary use of the lower riparian owners we need not in this case determine."

We adopt the rule in the last above case as applicable to the case before us.

Appellant insists that the case is not applicable because the stream in controversy was not a navigable stream, while in the case at bar the South Concho is alleged to be a navigable stream, across which no location of land could be made and in the waters of which there could be no right for purposes of irrigation as an incident to the ownership of land thereon; that the State always owned the stream as such and its waters until plaintiffs acquired the right to use the same by a compliance with the Acts of 1889 and 1893, by which the State vested in them the proprietory right to the use of the waters.

The error in this claim of plaintiffs arises from ignoring the fact that the riparian owner has the right to use the water in the stream flowing past his land, whether the stream be navigable or not, and that the irrigation of such land is in this State such ordinary use, for which the owner may consume all the water of a stream, if necessary. In the use by the riparian owner for ordinary purposes there is no distinction between navigable and unnavigable streams (Gould on Waters, Secs.

204 and 205), the use at common law being confined to domestic purposes alone. In this State such use includes irrigation, at least on such streams as the South Concho in the section of the State where the property in suit is situated. Plaintiffs' petition alleges that it is in the arid district, where irrigation is necessary for successful agricultural pursuits.

We do not think that the designation in our statutes as to locating and surveying lands on navigable and unnavigable streams means such streams as are so designated at common law. The Act of Congress of the Republic of Texas of December 14, 1837, Secs. 21 and 42, provides that all lands surveyed for individuals lying on navigable streams shall front one-half the square on the water course, and on unnavigable streams the square, and that all streams of an average width of thirty feet are navigable streams across which no line of surveys shall run. This law has been re-enacted and kept alive to this time and is now substantially in the Revised Statutes of 1889. Sayles' Civ. Statutes, 3910 and 3911, P. D. 4552. It is a matter of common knowledge that most of the streams in this State only thirty feet wide, and all of them in the arid districts, are not navigable streams in the sense of the common law. We judicially know that the South Concho is not a navigable stream in that sense. Denny v. Cotton, 3 Texas Civ. App., 644 and 645.

We do not think any sound argument can be predicated upon these statutes that would lead to the conclusion that it was the intention of the Legislature or the State to reserve to itself such a title to the water in designated navigable streams as would deprive the riparian owner of the right to irrigate his land therefrom. They were intended to prevent any one survey by locator from taking more than one-half the square of the survey on the river front, and to prevent it from taking two fronts including the advantage of timber bottom land and the results of navigation if, in fact, the stream should be navigable. City of Galveston v. Menard, 23 Texas, 395. It was not intended to prevent irrigation by the owner of land fronting on the river. Such land so becoming irrigable has a recognized superior value in this State to lands that are not so situated. Lands have been so classed by the colonization laws and our subsequent statutes and a special value given to them. P. D. 574-584-4523. Clearly it could not have been the intention of the Legislature to classify and grant land as irrigable and demand a special price therefor and at the same time withhold the privilege of irrigation from the owner. We think defendants are shown by plaintiffs' petition to own irrigable lands since they are irrigating them, that they have property rights in the irrigable character of their lands which cannot be taken from them for private purposes of plaintiffs in any case, or for public uses, without compensating them for their enhanced value as irrigable lands. The acts in question make no provision for condemning lands except for right of way, and assuredly they could not be enforced so as to take private land not intended for right of way,

even though it should be taken for public uses. We think the judgment of the court below as applied to this case is correct, and it is affirmed.

*Affirmed.*

Delivered January 22, 1896.

Writ of error refused.