ACME CEMENT PLASTER CO. v. AMERICAN CEMENT PLASTER CO. et al.

(No. 609.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHT TO CONSTRUCT LINE—STATUTES.

Rev. St. 1911, arts. 1231, 1235, relating to the use of streets and roads by telegraph companies, applies only to companies organized to construct and maintain telegraph or telephone lines.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

2. EMINENT DOMAIN (§§ 13, 69*)—RIGHT OF CONDEMNATION.

Land cannot be taken for private purposes in any event, and, upon being taken for public use, compensation must be paid; hence a private concern should not be allowed to appropriate another's property by the denying of an injunction to prevent the appropriation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53, 171–179; Dec. Dig. §§ 13, 69.*]

3. EMINENT DOMAIN (§ 47*)—CONSTRUCTION OF TELEPHONE LINE—EFFECT.

Where the fee of a county road as well as that of the right of way of a railroad company remains in the landowner, the erection of a telephone line on either is an appropriation of his property which cannot be justified, except in case of condemnation by a public service telegraph or telephone company.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

4. TELEGRAPHS AND TELEPHONES (§§ 10, 11*)—CONSTRUCTION—EASEMENTS.

Neither a county which has an easement in a public road, nor a railroad company which has an easement in a right of way over plaintiff's land can authorize the establishment of a private telephone line over such ways, as easements granted for public purposes cannot be used for private purposes.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 6, 7; Dec. Dig. §§ 10, 11.*]

5. INJUNCTION (§ 16*)—ISSUANCE—ADEQUATE REMEDY AT LAW.

Under Rev. St. 1911, art. 4643, providing that an injunction shall be issued where the applicant is entitled to the relief demanded, and the relief requires the restraint of some act prejudicial to the applicant, an applicant is entitled to an injunction, regardless of his remedy at law; the amendment of 1909, which added a provision, authorizing the issuance of injunctions to prevent irreparable injury to real property, irrespective of any legal remedy, not changing the previous rule.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 15; Dec. Dig. § 16.*]

6. INJUNCTION (§ 49*)—ISSUANCE—"IRREPARABLE INJURY."

As a landowner would be put to a multiplicity of suits to recover damages at law, and as defendants might in time acquire an easement, an injunction restraining defendants from erecting a telephone line over plaintiff's property should be issued, under Rev. St. 1911, art. 4643, providing for the issuance of injunctions in case irreparable injury to real estate is threatened, irrespective of any remedy at law, for by the term "irreparable injury" it is not meant that the injury must be beyond the possibility of repair by money compensation, but that it must be of such a nature that no fair and reasonable redress may be had in a court of law, and to refuse an injunction will work a denial of justice.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 102; Dec. Dig. § 49.*

For other definitions, see Words and Phrases, vol. 4, pp. 3772–3774.]

7. INJUNCTION (§ 12*)—ISSUANCE.

An injunction will not be issued to prevent an act already committed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 12; Dec. Dig. § 12.*]

8. INJUNCTION (§ 118*)—ISSUANCE—PETITION—SUFFICIENCY.

A petition merely alleging that plaintiff did not consent to defendants' erection of a telephone line over plaintiff's land does not sufficiently negative plaintiff's acquiescence therein to warrant an injunction to restrain the use of such a line.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 225–242; Dec. Dig. § 118.*]

Appeal from District Court, Hardeman County; J. A. Nabers, Judge.

Action by the Acme Cement Plaster Company against the American Cement Plaster Company and others. From an order denying a writ of injunction, plaintiff appeals. Reversed and remanded.

Decker & Clarke, of Quanah, for appellant. Huff, Martin & Bullington, of Wichita Falls, and S. D. Bishop, of Lawrence, for appellees.

HUFF, C. J. This is an appeal from the order of the district judge refusing to grant the prayer for writ of injunction, because the petition presented to him did not disclose such an equity as would justify him in granting the writ prayed for. The appellant, the Acme Cement Plaster Company, complained of the American Cement Plaster Company and C. H. Newby, alleging substantially that the appellant was a corporation

duly chartered under the laws of Illinois, and doing business in Texas, and that the appellee American Cement Plaster Company is a corporation chartered under the laws of the state of Kansas, for the purpose, and with powers, to mine, manufacture, and sell gypsum and its products, and doing business in Texas, and was not chartered for the purpose, nor had it the power or authority, to construct and maintain magnetic telegraph lines, and that C. H. Newby was the agent and manager of the company in Hardeman county, Texas. It is alleged that on the 1st day of January, 1910, and at all times since then, appellant was and is the owner of the fee in and to all those parts of sections 208 and 209, Block H. W. & N. W. Ry. Co. Surveys in Hardeman county, Tex., lying north of the Ft. Worth & Denver City Railway Company's right of way, and that on all of said days and dates it was lawfully seised and possessed of said land, holding the same in fee simple, with the exception: (a) That there is a public road meandering across said lands in a westerly direction, from the town of Quanah, known as the Quanah & Childress road, same being about 60 feet in width; (b) a public road extending in a northerly direction from intersection with the last-named road along the west side of section 208, occupying a strip of about 20 feet off of said section; that Hardeman county owns an easement over said land used as a public road for road purposes, but that the fee thereto is now and has been on all the dates aforesaid in the plaintiff; (c) that the Acme Tap Railroad Company is the owner of an easement over and across said section 208 in a northerly direction from a connection with the Ft. Worth & Denver City Railway Company, the said right of way being 100 feet in width, but that the fee of said right of way is vested in the appellant; that on or about January 1, 1911, the appellees, without the consent of appellant, erected their telephone line over and across plaintiff's said land owned and held in fee, and over and along the right of way of the Acme Tap Railway Company and since said time has been using said line for the purpose of transmitting messages from Quanah to the plaster mill of appellees, and that about January 1, 1914, appellant notified appellees to remove said telephone line from appellant's land; that about February 10, 1914, appellees, over the objection and protest of appellant, began digging holes in and along and across and over appellant's land above described, and said that it is their intention to place telephone poles in said holes and wires on said poles, and use said telephone line for their use and benefit; that at this time the holes have been dug over and across sections 208 and 209, about 54 feet north of the north boundary line of the Ft. Worth & Denver City Railway Company, and

state that it is their intention to place the remainder of the telephones on and along the public roads on the west side of section 208; that some of the holes now excavated for the telephone line are on and in the Quanah & Childress public road aforesaid, and some are on the other lands of plaintiff; that defendants will continue to operate and construct said telephone lines, unless restrained, and the plaintiff has no adequate remedy at law. Appellant's prayer was for a writ of injunction restraining appellees' agent and employés from further using and maintaining the telephone lines now in operation above described, and from erecting and maintaining the telephone lines above set out as under construction, and from further going upon and over and across plaintiff's land, other than along the public roads, and from further digging holes and pits in the public roads across said land or upon other parts of said lands, and from further operating a telephone over and across the public roads on said lands, and from further operating a telephone over the remainder of said lands above described, etc.

Appellant's first assignment is substantially that the court erred in refusing the writ of injunction prayed for, because the petition showed that appellees were naked trespassers upon appellant's land, doing an unlawful act over the protest and objection of appellant in constructing a telephone line over the lands held and possessed by appellant in fee simple. The propositions thereunder presented are: (1) That an injunction will lie to protect the owner's possession of real property from a forcible trespass. (2) That it appears from the allegation that appellees are not corporations organized and chartered for the purpose of constructing and maintaining a magnetic telegraph line, and had no right as such to construct over the public roads of which appellant has the fee. (3) That the restraining order should have been granted, restraining the operation over the railway right of way, the fee to which was owned by appellant, as well as to the abutting lands.

[1-3] The allegations show that the appellees are not such corporations as are given the right of eminent domain or the right to construct and maintain telephone lines over the public highways. Under articles 1231 and 1235, R. S., this court held, in Roaring Springs Townsite Co. v. Paducah Telephone Co., 164 S. W. 50, "The statute gives the privilege only to corporations created for the purpose of constructing and maintaining telephone lines," and, if not such a corporation, it should be treated as a trespasser in attempting to construct its line, and the owner of land would be entitled to an injunction. The allegations in the petition show that the line, as constructed and used, and the proposed extension is for the private use of appellees. Land cannot be taken for private purposes in any case, and can be taken for public use only upon compensation being made

therefor. Barrett v. Metcalf, 12 Tex. Civ. App. 247, 33 S. W. 758; Borden v. Trespalacious, Rice, etc., 98 Tex. 494, 86 S. W. 11–14, 107 Am. St. Rep. 640; Kyle v. Ry. Co., 3 Willson, Civ. Cas. Ct. App. § 436, which case quotes Cooley on Const. Lim. (4th Ed.) 660. "The lands of an individual cannot be taken for public use without compensation; much less can they be wrested from one man and given to another, neither directly nor indirectly by such clogs, restrictions, and burthens upon his right of the recovery as to in a great measure destroy the value of the property itself." Hearn v. Camp, 18 Tex. 549.

Whether the statute giving to telephone companies the right to construct on or over the public roads can do so without compensating the owner of the fee is a much-mooted question by the various courts, and whether it is an additional burden on the land has occasioned diverse holdings. For suggestions by this court on this point, see Roaring Springs v. Paducah, etc., supra; also, for conflict between holdings, see McCann v. Johnson Telephone Co., 69 Kan. 210, 76 Pac. 870, 66 L. R. A. 171, 2 Ann. Cas. 156; Bronson v. Albion Tel. Co., 67 Neb. 111, 93 N. W. 201, 60 L. R. A. 426, 2 Ann. Cas. 639.

Is the erection of a telephone line on the right of way of the railway company and on the public roads a taking of the land from the owner of the fee? Our Supreme Court has answered this question:

"It should require only a proper regard for plain physical facts to bring the mind to the conclusion that the location of a railroad, like that of defendant, upon land in which the public have only the easement of a highway and another has the fee, is the taking of that part of the land occupied by the track, at the very least, and hence a taking of the property of the owner of the fee. No one disputes that this is the legal effect of such an appropriation of land not burdened with such an easement, for, by the constitution and use of the railroad, the land is actually occupied, and necessarily, to a greater or less extent, the owner is excluded from that complete and exclusive use and control to which his ownership entitles him. Is it otherwise, except in degree, when, instead of only one, there are two interests in the soil to be considered, the public easement and the fee? Is not the land appropriated and used in that case in the same way and for the same purposes as in the other? In both instances the railroad company actually occupies and uses the soil itself in the assertion of a right of way in and over it. Is there a taking in one instance, and not in the other? To make so fundamental a distinction is to deny to the visible facts their necessary consequence. * * * The fee in the land is not as valuable to him as if it were not burdened with the street, but nevertheless it is property which cannot be taken without compensation first made or secured. If the easement of the street should come to an end, the fee would remain burdened only by the easement of the railroad right of way, and this lays bare the fact that the private property in the street is diminished to the extent of such right of way. In such situation the entire estate is divided into two interests, the easement of the public and the fee of the private owner, and the construction and use of a railroad over it is as much the taking of the corporeal property as if there were but one interest." Lumber Co. v.

Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870.

It is further held in that case that the fee burdened with an easement is "property" which cannot be taken without compensation therefor, and such threatened appropriation is enough to sustain the application for injunction. It follows therefore, when appellees, for their own personal benefit, entered upon the right of way and the roadway and sought to erect thereon their telephone lines, they took and attempted to appropriate the property of appellant to their own use. This the law does not sanction.

[4] The county and the railway company could use the easement for the purposes for which it was granted them—that is, for public use—but could not farm it out to private individuals for their private ends or use. It was not therefore necessary for appellant to negative the consent of the county or the railroad company.

[5, 6] It is urged by the appellees herein that no irreparable injury is shown, or that appellant did not allege and show that it had no adequate remedy at law. As seen from what we have said above, the action of the appellees is a threatened trespass on the land of appellant. Our Supreme Court, in construing article 4643, R. S., which provides that a party is entitled to the right of injunction "where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant," held that this provision modifies the common-law doctrine denying the equitable remedy of injunction where there exists an adequate remedy at law. S. W. Telegraph & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994. This article was amended in 1909 (Acts [1st Extra Sess.] 1909, c. 34), adding to subdivision 3 thereof additional matter, which now reads that the applicant is entitled to the writ in all cases where he "may show himself entitled thereto under the principles of equity * * * or irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law."

Clearly appellant had the right to prevent the threatened trespass on his real estate. Was the threatened trespass an irreparable injury? This is the serious question in this case. The pleadings of appellant on this point are very meager. However, we have concluded, when the entire pleading is taken together, that an irreparable injury is shown within the meaning of that term as defined and explained by the courts. "By irreparable injury is not meant that the injury is beyond the possibility of repair by money compensation, but must be of such nature that no fair and reasonable redress may be had in a court of law, and that to refuse the injunction would be a denial of

justice." High on Injunctions, § 22. Injunctions to prevent trespass will be granted "when, owing to the peculiar character of the property in question, the trespass complained of cannot be adequately compensated in damages and the remedy at law is plainly inadequate." A trespass of a continuing nature whose constant recurrence renders the remedy at law inadequate, unless by multiplicity of suits, will be enjoined; so where from the nature of the case it is impossible to estimate the actual damages (Id. §§ 697, 700, 701) or a trespass which, if continued, will ripen into an easement, may be enjoined.

When an injunction is granted upon the ground that the trespass may ripen into an easement, the question of damage is immaterial. The relief will be allowed, although the act complained of results in no actual or substantial present injury to the complainant. Id. §§ 702, 702a, 715. Our Supreme Court held that a threatened trespass upon the fee, where there was an easement, was grounds for injunction. McCannon Lumber Co. v. Trinity Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870, supra. If this was an action to prevent damages to abutting property, perhaps it would then be necessary to allege such facts as would constitute a nuisance or the like. Certainly a party has the right to restrain a threatened invasion on his premises, and the wrongful appropriation of his property. Damages may be·inconsequential at the time, but, by repeating the act or continuing it, may establish a right in or to the property. By the allegations in the petition, it is shown that appellees are threatening to erect permanent structures on appellant's property, by means of which a passage over appellant's land is established, and, if permitted to continue, would ripen by prescription into an easement over appellant's land. To measure the damages would be practically impossible, and, in order to secure compensation, would require a multiplicity of suits. Townsend v. Epstein, 93 Md. 537, 49 Atl. 629, 52 L. R. A. 409, 86 Am. St. Rep. 441; Field v. Barling, 149 Ill. 556, 37 N. E. 850, 24 L. R. A. 409, 41 Am. St. Rep. 311. "If the use be continued it may' in time ripen into a title by prescription, and we are of the opinion that the plaintiff is entitled to an injunction against such a continual, trespass. She ought not to be compelled to sell her land in this way." Cobb v. Massachusetts Chemical Co., 179 Mass. 423, 60 N. E. 790; Railway Co. v. Miller, 98 Tex. 270, 83 S. W. 182; Barbee v. Shannon, 1 Ind. T. 199, 40 S. W. 584. To require the appellant to accept damages in this case would be to require it to sell its land to a private individual when the·interest of the public is not to be subserved. Whether the damages are much or little, equity will nevertheless protect the owner of property in its enjoyment, whether that enjoyment be one of sentiment or a pecuniary one. An individual will not be permitted to deprive him of it, and the public cannot do so without adequate ·compensation first paid.

[7, 8] The allegation in this case shows that January 1, 1911, without appellant's consent, appellees constructed their telephone on the right of way of the railroad, and continuously used it until February, 1914, when appellant notified them to remove it. Appellant, in its petition, asks that the use of this wire over the right of way be enjoined. When an act sought to be enjoined has already been committed, equity will not interfere, since the writ would be a useless thing. High on Injunctions, § 23; Kerr v. Riddle, 31 S. W. 328. The petition is not sufficient in this case to warrant the restraint of the use of the line already constructed on the right of way, since acquiescence in its use is not negatived. While it is alleged that the construction was without appellant's consent, it may nevertheless have acquiesced therein and in appellees' use thereof. This part of the prayer will be refused, but we think the appellees should be restrained from further erecting poles for its lines by digging holes and placing poles therein, and stringing their wire on such poles, whether the poles be placed in the public road or on any other portion of appellant's lands.

The case will be reversed, with direction to the judge of the district court to grant a temporary writ of injunction as prayed for, limited as above set out in this opinion, and that he order the clerk of the district court of Hardeman county to ♦ file the petition, issue citation, and a writ of injunction, upon appellant executing a bond, conditioned as required by law, in the amount which shall be fixed by the district judge.

Reversed and remanded.