## Dows and others *v.* CONGDON and others.

An order of the Supreme Court, setting aside a sale of mortgaged premises, and directing a reference, to ascertain when two of the defendants in the foreclosure suit entered on the premises, and under what agreements, or title, respectively; also the value of the premises occupied by those defendants respectively at the time they took possession of the same; and what the relative value of such parties respectively, independent of the improvements made by such defendants, is, with reference to the value of the rest, and of the whole of the mortgaged premises; and the cost or value of such improvements respectively was; and reserving to either party, on filing the report of the referee, the right to move for its confirmation, and for an order determining the payments to be made by the two defendants named, respectively, is not appealable to this court.

APPEAL from an order of the Supreme Court, affirming an order of the special term for a resale of mortgaged premises, and directing a reference to ascertain the value of the land without the improvements, in the possession and use of the defendants Congdon, Maits and Potter, owners of the Canandaigua and Niagara Falls Rail Road, and of the Buffalo,

New York and Erie Rail Road Company, successors of the Buffalo, Corning and New York Rail Road Company.

*G. F. Comstock,* for the appellants, Dows and Mairs.

*F. E. Cornwall,* for Thomas Brown (purchaser) and The Buffalo, New York and Erie Rail Road Company.

*C. N. Potter,* for the respondents, Congdon, Brown and Potter.

WRIGHT, J.    There is a preliminary question, viz. whether an appeal lies to this court from the order.    Our jurisdiction to review orders is limited to three classes: 1st. When an order affecting a substantial right is made in an action, and in effect determines the action and prevents a judgment from which an appeal may be taken; 2d. When the order grants or refuses a new trial; 3d. A final order, affecting a substantial right, made in a special proceeding or upon a summary application, in an action, after judgment.    (Code, § 11.) The order which the appellants seek to review sets aside a sale of mortgaged premises, and directs a reference to ascertain when the Canandaigua and Niagara Falls Rail Road Company, and the Buffalo, Corning and New York Rail Road Company, two of the defendants in the foreclosure suit entered on the mortgaged premises, and under what agreements or title respectively; also the value of the premises occupied by the rail roads respectively at the time they took possession of the same, and what the relative value of such parties respectively, independent and free of the improvements put by the owners of such rail roads, and with reference to the value of the rest of, and of the whole of the mortgaged premises, and what the costs and value of such improvements respectively were.    Either party, on filing the report of the referee, might move for its confirmation and for an order determining the payments to be made by the rail road owners respectively.

I regard the order as not appealable. It does not fall within the first class. It neither, in effect, determines the action in which it was made, nor presents a judgment from which an appeal might be taken. It is substantially an order directing a resale of mortgaged premises on the ground of mistake and surprise. The granting of such an order, when it involves no question of strict legal right, is within the discretionary powers of the court below, and not appealable. Nor does it fall within the third class. It is not a *final* order. A reference is directed to ascertain the proper order of the sale and the value of the lands. It determines no amount, nor even the nature of the amount to be paid. All questions growing out of the reference are reserved until the coming in of the referee's report, when an order is to be made. From that order, when made, the plaintiffs, and the Buffalo, New York and Erie Rail Road Company, which seems to have been acting at the sale with the view of screening itself from liability, may doubtless appeal. But this appeal is premature.

The appeal should be dismissed.

Denio, Davies, Rosekrans, Marvin and Balcom, Js. concurred.

Selden, J. having been counsel in the cause, took no part.

Emott, J. (dissenting.) This is an appeal from an order made at a general term, affirming a previous order of the special term, setting aside a sale under a judgment of foreclosure. It is insisted that such an order is not the subject of appeal to this court. There are cases in this court, and one of them quite recent, (*Hazleton* v. *Wakeman*, 3 How. Pr. R. 357; *Wakeman* v. *Price*, 3 Comst. 334; *Buffalo Savings Bank* v. *Newton*, 23 N. Y. Rep. 160,) which at a first glance would lead to such a conclusion. But while I have no disposition to deny that these cases were correctly disposed of, or at least that in each of them the adjudication

appealed from was not the subject of review upon its merits, it will be seen upon a scrutiny that the rule which I have stated as to the non-appealability of such order was not necessary to their decision, and such a rule will be too sweeping in its consequences to be adopted without great consideration.

The language of the code, in respect to appeals to this court and to the general term of the Supreme Court, from this class of orders, is identical. (Code, §§ 11, 349.) An appeal lies to either court from an order made upon a summary application in an action, after judgment, and which affects a substantial right. If, therefore, an order vacating or refusing to vacate a sale under a judgment or decree is not appealable to this court, it would not seem to be the subject of review by the Supreme Court.

In all the cases reported in this court, it is admitted that an order setting aside or refusing to set aside a foreclosure sale affects a substantial right, but it has been said that the relief asked upon such a motion is strictly a matter of favor, and within the absolute discretion of the court. Judge Pratt said in *Wakeman* v. *Price*, (3 Comst. 334,) that granting or denying such a motion was as clearly a matter of practice as an order granting or denying a motion to open a default, or to allow costs. Judge Denio said in *The Buffalo Savings Bank* v. *Newton*, (23 N. Y. Rep. 162,) that granting such an order was a matter of favor, resting in the discretion of the court.

The facts in these cases perhaps justified the remark in reference to them. In *Wakeman* v. *Price* the principal and only ground stated in the report of the case was inadequacy of price. In the *Buffalo Savings Bank* case the reason given for the motion was that one party interested in an equity of redemption had forgotten the day of the sale, and inadvertently became in default. It may very well be that an appellate court will not and ought not to review such an exercise of mere discretion as these cases involve. But orders

granting or refusing applications to vacate sales in foreclosure or otherwise, do not always address themselves, like motions to open defaults, to the mere favor of the court. Such was not the case in the present instance. Such is not the case where questions of fraud arise, or of the order of sale of different parcels of the mortgaged property. With due respect to the language of the eminent judges in the cases to which I have referred, I think it would be more proper to say in those, and in many such cases, that an exercise of discretion, such as orders made upon such grounds involves, would not be reviewed in this court, than to make the sweeping proposition that no appeal will lie from this class of orders.

In *Wakeman v. Price,* Judge Pratt declared his intention to adhere to the rule adopted by the late court of errors in regard to this class of appeals; referring to *Rowley v. Van Benthuysen,* (16 Wend. 372;) *Rogers v. Holly,* (18 id. 350.) I agree with him that the rule recognized by those and other cases in the court of errors is the rule intended to be adopted by the code, and I think it is expressed with tolerable clearness in that statute. *Rogers v. Holly,* (18 Wend. 350,) was an appeal from an order of the Chancellor upon a question of discretionary costs. *Rowley v. Van Benthuysen,* (16 Wend. 372,) was an appeal from an order refusing to open a default. Neither of these appeals was sustained. On the other hand, in *Collier v. Whipple,* (13 Wend. 224,) the court of errors entertained an appeal from an order granting a resale in a foreclosure case, and heard an elaborate argument on the merits. In *Tripp v. Cook,* (26 Wend. 143,) there was an appeal from an order refusing to set aside a sale. The objection was taken that such an order was not the subject of appeal, and was fully argued. The objection was overruled, Senator Verplanck delivering an opinion marked by both learning and good sense, and the appeal was subsequently heard and decided upon the merits. The principle established by these cases is, as stated by Senator Verplanck in *Tripp v. Cook,* that the

appellate court will not undertake to regulate the practice of the court below, or to entertain appeals on decisions merely regulating their modes of proceeding; and within the judicial discretion of the courts, not to be resolved into any general legal or equitable principles, nor passing on the merits of the controversy. He adds that the principle refers solely to the practice of the courts, and to questions of pure and unmixed judicial discretion. And he proceeds to indicate the distinction between a discretion which is arbitrary and absolute, and subject to no rules, and that discretion which is to be exercised according to law, and must be subject to review. Judge Sutherland has discussed the same subject, and defined these sorts of discretion as clearly as the nature of the case admits, in *The People* v. *The N. Y. Superior Court,* (5 Wend. 125.) The distinction between that discretion which is and that which is not the subject of review is often shadowy, and difficult to apply in practice, but it may be seen by comparing the action of a court in opening a default, on the one hand, and on the other, in vacating an injunction or in setting aside a judicial sale for fraud or misconduct of an officer or a party. The former is a mere exercise of judgment and volition, necessarily arbitrary and governed by no fixed rule. The latter involves fixed principles of equity, which have been as long recognized and as thoroughly discussed as any head of equity jurisprudence. This is the distinction which the legislature intended to preserve, in regulating in the code the jurisdiction of appellate courts in such cases. Unless an order affects a substantial right it is not appealable, either to the general term of the Supreme Court or to this court. By an order affecting a substantial right is meant not a decision which may ultimately or consequentially affect such a right; for hardly any order can be made in the progress of a suit that could not be said to have some bearing upon the ultimate rights of the parties. In such a sense, an order refusing to open a default might be said to affect the merits or the substantial right of

the party; since its effect might be to prevent him from interposing a valid defense. But what the legislature intended was an order granting or refusing that to which the party had a right, and which was substantial, in his cause or his interest. Neither a matter of practice nor an application addressed to mere favor, or to the pure and unmixed discretion of the court, is a substantial right of the party. If it be matter of practice it is not substantial; and if it be simply a favor, which it is altogether a mere discretion of the court to grant or refuse, it is not a right. But it is otherwise with an application as to which a party can say: I ask that the court redress an injury which I have sustained, and where I can cite known precedents and settled principles to show both the wrong and the remedy. The learned judge who delivered the opinion in the *Buffalo Savings Bank* case observes of the order under consideration there, that in one sense it affected a substantial right. With great respect I must observe, that when this is true in any proper sense, it has always seemed to me that there was an end of the question of appealability. When an order, in other respects appealable, really and directly affects a substantial right of the party appealing, the mandate of the statute is clear to this court, and to all other appellate tribunals, that they shall review the decision of the inferior court. We are as much commanded to entertain appeals in such cases as we are forbidden to hear them in cases where no such right is touched.

.There may be orders vacating or refusing to vacate judicial sales, which are mere arbitrary acts of judicial favor or discretion, but all orders affecting such sales are certainly not of that character, and I therefore hold to a qualification of the doctrine apparently announced by the cases in this court to which I have referred. In the present case, for instance, if the court below were justified in setting aside this sale in the manner and for the reason disclosed in these papers, they were bound to do it. The respondents had a right to invoke the equitable principles upon which the court acted, or the

purchaser had a right to retain his bid. No court could arbitrarily say that they would decide between them according to mere will and unmixed discretion. Nor could any decision be made of such a question as is here presented which is not the subject of review.

I proceed to examine the merits of this appeal. I shall not consider whether the respondents were misled as to the sale, or prevented from protecting their rights either accidentally or intentionally. Although the judge who granted the motions at special term intimated that there was sufficient cause shown for granting relief on these grounds, he declined to place his decision upon them, or to make such an order as would be appropriate to such a state of facts. (See 16 How. Pr. R. 576, where the case at special term is reported.)

The order rests upon two alleged violations of the respondent's rights: first, in the order of the sale, and second, in the subject of the sale. A certain portion of the mortgaged premises is owned by two rail roads, the Buffalo, New York and Erie R. R., and the Canandaigua and Niagara Falls R. R. The judgment directed a sale of the parcel in bulk, without noticing the titles or possessions of those rail roads respectively. There is no dispute that the title or right, legal or equitable of both the roads, was subsequent to the plaintiffs' mortgages. These were dated in 1851, and in January, 1852. There is some difference as to the precise time when the rail road companies entered upon the portions of the premises which they occupied. The weight of the evidence furnished upon this point, however, is strongly in favor of the Buffalo, New York and Erie company, or rather the Buffalo and Corning R. R. Company, to which they succeeded, as having first entered and commenced to construct their road. Afterwards the Canandaigua road was constructed across the mortgaged premises. Neither of the rail road companies took legal proceedings to acquire title. In May, 1852, the Buffalo and Corning R. R. Company took a deed from the mortgagors, of the land owned by them, and the Buffalo, New York and Erie company

have acquired their title and succeeded to their rights as I have stated. The Canandaigua and Niagara Falls company have never received any deed, but they entered and continued to occupy under a verbal agreement with the mortgagors for title, or the appropriation of what they required. The Buffalo, New York and Erie company were represented at the sale, and at their demand the residue of the premises was sold before that belonging to them, on the ground that they were the first alienees. The part of the premises which had not been sold, nor occupied by any other person than the mortgagors, was first sold, and then what was in possession of the Canandaigua company. The result was that enough was realized from these sales to satisfy the mortgage, and the parcel which had been conveyed to the Buffalo, New York and Erie R. R. Co. was not sold at all. Assuming the facts to be as claimed by this latter company, and as believed to be by the referee, and as the weight of the evidence clearly was upon this action, the order of sale was right. The equitable title of the latter company, by their contract and possession, was prior to the similar title acquired by the Canandaigua R. R., and there is nothing in the suggestion that this privity was lost by completing the purchase, and merging the equitable in a legal title under an ordinary conveyance to the Buffalo rail road. It would be very extraordinary if the mere equitable title of the respondents, posterior in date to a similar right of the Buffalo company, should obtain priority and be regarded as a prior alienation, because they neglected or were unable to complete their purchase, while their predecessors carried out their contract and took their deed, while continuing in possession. The order of sale adopted by the referee, as between these two parcels and their owners or possessors, was manifestly right, and the order appealed from can not be justified by the order of alienation of the property. The order, indeed, could not be sustained for any such reason, in any view of the case. In the first place, it does not assume or declare that the respond-

ents' parcel was in fact first aliened and therefore to be last sold, but while setting aside the sale which had been made, the order directs an inquiry as to the order of alienation of the two parcels occupied by the two rail roads. Besides, the order does not direct a resale in the proper order either as assumed by the court or as it will be ascertained by the referee, but it exempts the parcels owned or occupied by these rail roads from sale and the lien of the plaintiff's mortgages altogether, upon their contributing, to the satisfaction of the mortgages, each an amount equal to the original value of the land taken by them antecedent to their improvements.

The decision of the Supreme Court was undoubtedly based upon the idea that the plaintiffs had subjected to the lien of their mortgages and sold what they had no right to. In other words, that the structures or improvements of the rail roads were not subject to the lien of these mortgages, and that of the property taken and occupied by the rail roads only the original value of the land previous to the erection of the structures of the respondents, could be appropriated to satisfy the plaintiff's judgment. This, however, was not the meaning nor the language of the judgment itself, for that contained no such exception, and it was accordingly a part of the order that the judgment should be modified, although the Buffalo rail road had not answered, nor claimed any such right, and the Canandaigua road which had answered, setting up a different defense, had failed to appear at the trial.

This theory of the rights of the respondents can not be supported upon the ordinary doctrine of the equitable rights of a purchaser to improvements against a vendor; for the obvious reason that the question here is not between vendor and purchaser. Whatever equities the respondents might have against the mortgagors from whom they purchased, these equities would not affect a prior mortgage of which they had notice by the record, and whose holders were not privy to the contract with the mortgagors. It is not necessary to consider what the extent of a purchaser's equity.

against a vendor, to protection or compensation for improve-
ments in certain cases, may be. It is sufficient that it has
never been supposed nor can it be shown to bind a prior
mortgagee who is neither party nor privy to the contract.
Improvements or expenditures made under such circum-
stances are not *bona fide,* because the record of the mortgage
is notice to the purchaser, and he acts at his peril. There
are cases where a mortgagee in possession, and supposing
himself to have a legal as well as an equitable title, has
made permanent improvements, with the knowledge and im-
plied assent of the mortgagor. Thus the mortgagor coming to
redeem has been compelled to pay not only the mortgage
debt as entered, but the value of such improvements. (See
*Benedict* v. *Gilman,* 4 Paige, 62; *Mickles* v. *Dillaye,* 17
N. Y. R. 82.) But these cases lend no support to a claim
to subject a mortgagee upon foreclosure to the cost of improve-
ments made by a purchaser from the mortgagor with notice
of the mortgage.

It remains to consider what effect the power conferred by
statute upon the respondents, to take the property for pub-
lic use, has upon the present grantees. It is not denied that
the respondents, at the time of their entry, could have insti-
tuted proceedings and confiscated the property as it then was
to their use, for the public. These proceedings, if properly
conducted, would have deprived both the mortgagor of his
equity of redemption, and the mortgagees of their lien or
mortgage title, upon making due compensation to both, esti-
mated by the value of the property in its then condition.
But they did not take this course. They entered under a
contract with the mortgagor, and of course subject to the
rights of the mortgagees, whose title indeed they could have
at any time acquired and extinguished, as they still can.
But between the respondents and the mortgagees there is
no contract. Conceding that the respondents have a right
to an appraisement of damages with a view to the extinguish-
ment of their right and title, or that of the purchaser under

their mortgage, which I have no doubt they had, yet I am unable to see where or how the Supreme Court, exercising its equitable jurisdiction upon motion after a judgment and sale on foreclosure, obtains power to ascertain this compensation and perfect the respondents' title. The rights of the respondents do not, as I have said, grow out of contract. They are vested by statute with the right of eminent domain belonging to the state. This right is limited by the constitution, and must be exercised according to its provisions. The respondents have the right to take for public use whatever title the purchaser at the sale has obtained, making him due compensation, to be ascertained by a jury, or by commissioners in the mode pointed out by the constitution. This is the relation of the parties to each other, and the whole of it. There are no equities growing out of such relation, which would authorize a court to compel a release or conveyance by the mortgagee upon receiving such compensation as the court should determine. A suit in due form, as for a specific performance, could not be entertained for such a purpose, and still less can such relief be given on motion.

The sale in this case was regular, and was authorized by a judgment to which the respondents were parties. What rights the purchaser acquired under such a sale, considering the power vested in the respondents and their relation to the property, are questions which we are not called upon to determine. The purchaser does not complain, nor ask to be relieved. If he had, and had shown misleading or mistake, a totally different element would have been introduced. But the purchaser is willing to take the risk of his purchase, and to complete it, leaving the respondents to acquire his title by subsequent proceedings according to the statute, making him whatever compensation the law awards him. Whether this will be the present value of his purchase, or its original value without the improvements and expenditures of the respondents, is a question of which he takes the risk, but which we can not in this proceeding decide.

The result of this reasoning is, that the Supreme Court exceeded their authority in the order appealed from, and that it was erroneous on the merits.

After this opinion had been prepared, a point was suggested in consultation, that this order is not final, in consequence of its directing a reference to ascertain the order of alienation of the two parcels of real estate to which I have referred. Four of the judges entertained this opinion, and upon consideration, while adhering to the views already expressed upon the appealable character of such an order, if it had contained no provision for a reference or any subsequent proceedings, I am willing to concur in their opinion, although with some hesitation. This will lead to a dismissal of the appeal.

Appeal dismissed.