Barbee et al. vs Shannon, et al.

Opinion delivered January 30, 1897.

*Judgment of Indian Court—Res Judicata.*

A judgment of dismissal, entered by a Court of the Creek Nation, on the ground that there has been a former adjudication, is res judicata in a subsequent action between the parties in the United States Court.

*2.  Lease.*

>  All inquiry as to the power of the Chief of the Creek Nation to
>  make a lease, is precluded in the United States Court, by an
>  adjudication, in a suit between the parties in a Creek Court,
>  that the lease is valid.

*3.  Record—Amount in Controversy.*

>  The record must affirmatively show that the amount in con-
>  troversy in an action, exceeded the jurisdictional limit of the
>  court rendering judgment, and where it does not do so, it will
>  be presumed in a subsequent action that the court had jurisdic-
>  tion.

*4.  Judgment of Creek Court—Informalities.*

>  Informalities in the judgment of a Court of the Creek Nation
>  will be disregarded by the United States Court, in determining
>  its validity, and such judgment will be enforced if the intent
>  can be discovered from all of the accompanying circumstances.

*5.  Conveyance—Want of Consideration.*

>  No rights are acquired by a conveyance, without consideration
>  of a reversionary interest in a lease to pasture lands in the
>  Creek Nation.

*6.  Trespass—Right of Reversioner to Maintain Action to Prevent—In-
>  junction.*

>  Although the reversioner, who holds a lease of pasture land
>  from the Creek Nation, is not entitled to possession, he has a
>  right of action against third persons, who build fences on the
>  land, thereby obstructing the tenant and injuring the revesion.
>  And in such case injunction would lie to prevent the continu-
>  ance of such wrongful acts, for the reason that the remedy at
>  law was inadequate and to prevent a multiplicity of suits.

Appeal from the United States Court for the Northern
District.

WM. M. SPRINGER, Judge,

Action for injunction by S. Barbee and others against
George Shannon and others.  Judgment for defendants.
Plaintiffs appeal.  Reversed.

This was a suit in equity brought by appellants against appellees to restrain them from continuously trespassing upon certain lands in the Creek Nation, which had been leased from said Creek Nation, as a pasture, under its laws regulating the fencing and use of pastures. On October, 6, 1889, the Creek council passed a law authorizing the fencing of what are known as "border pastures." James Villison, a Creek Indian by blood, by complying with the Creek law obtained the right to fence one of these border pastures; said pastures being for rental to United States citizens, or personal use, as the owners thereof chose. The pasture in question was fenced to rent to Edwards Bros. citizens of the United States, who at once filled the same with cattle, and continuously used and occupied the same. Said pasture lease was to extend for the term of three years, but prior to its expiration, to-wit, November 3, 1892, the Creek council passed a law renewing said pasture leases, and extending them for the term of six years. Prior to the expiration of Willison's lease, one Mose Smith, an Indian, filed an application for a lease of the property used and leased by said Willison, together with some other property which had been used by Willison & Weldon,—said Weldon being married to a sister of said Willison,—but which leased property was not embraced in any pasture contract. Willison & Weldon protested against the issuance of a contract to Smith upon the property to which they had a lease, and the matter was compromised by taking in Smith, and having the renewal contract embrace all the land filed on by him. Thereupon, on January 3, 1893, a contract was given on the whole of the property. The other lessees from the Nation purchased Mose Smith's interest, and at once entered into a contract subletting the whole pasture to Edwards Bros., who had occupied the pasture for some three years prior thereto, and who are made parties to this suit. Rent was paid to and received by the Creek Nation for said

pastures. Subsequently one of the appellees, Georg
Shannon, who also had certain rights by marriage to a siste
of James Willison, and who claims to have been in posses
sion of the land in controversy long prior to the lease fror
the Nation above mentioned, leased a portion of the same fo
the term of seven years from one Richard Nixon, a Cree
citizen, and attempted to occupy it under Nixon's right t
hold such pasture,—first under the mile-square law of th
Nation, and under the right of a citizen to make an improve
ment within three miles of a railroad, and then by virtue c
a lease obtained by Shannon and Nixon from the same chie
who had granted a contract to Willison and his associate:
Appellants set up the claim of prior adjudication of th
matters in controversy had in the United States Court in th
Indian Territory (but this claim was abandoned); that, aft
the determination of the suits in the United States Cour
above mentioned, appellee George Shannon and his hei
went to the Creek Court in Coweta district, and there i
stituted suit to determine the rights between himself ar
heirs and these appellants as to the property involved in th
suit; that said suit was tried upon its merits, and all parti
were represented by counsel, and that judgment in said ca
was rendered in favor of appellants; that thereupon an ord
was issued to said Shannon and his heirs to take down ar
remove the wire fence inclosing that portion of the pastu
of appellants now in controversy, and a further order w
issued to Arley Davis, captain of the Indian Light Hor
Company, to cut said fence in event of Shannon's failure
obey said order. In support of these allegations, appellar
introduced the following: First. An order from N.
Childers, judge of the Coweta district, Creek Natic
"Coweta District, M. N., June 1, 1893. Arley Davis, Capta
L. H. Company, Greeting: By power of authority vested
me by law 'of the Muscogee Nation, I do hereby comma
you to cut down all fences built in these following pasture

Mingo & Miller, Weldon & Willison, P. Weldon, Smith, and Mrs. Barbee pastures; said fences which were not built according to law in regard to building and improving in these fixed pastures. Given under my hand this 1st day of June, A. D. 1893. N. B. Childers, Judge Coweta District, M. N." Second. A certified copy of a judgment as follows : "Geo. Shannon & Heirs vs Smith, Willison & Co. Pasture. The above-entitled cause was brought before this court by Geo. Shannon on behalf of himself and heirs. Both parties to the suit were present,—the plaintiff, represented by N. B. Childers and Wm. Perryman; and the defendants, by A. P. McKellop, Thos. Scott, and Jos. Keely. The defendants moved that the cause be dismissed for the reason that the same had been legally and properly brought before the court during the official term of Hon. N. B. Childers, judge of the said district, and adjudicated, and that the judgment of the said court had been enforced, and the wire fence built and claimed by said Geo. Shannon was cut down by the light horsemen of said district by order of said court. All cases coming under the jurisdiction of the District Court, when adjudicated, become final, and there is no appeal from such decision. Our laws make special provision for reopening civil cases, and, as it appears from the records of this office that a rehearing has not been granted in the above-styled case, it is clearly evident that the said case cannot be tried in accordance with law. The motion of the defendaht is therefore sustained, and the case dismissed. Witness my hand and seal this 23d day of May, 1894. Joe Mingo, Judge Coweta District, M. N." Third. A certified copy of an order by Judge Mingo to Shannon and heirs, as follows : Judge's Office, Coweta District, M. N. May 23, 1894. George Shannon and Heirs, Gibson Station: You are hereby notified and ordered to take down and remove all wire fences inclosing any pasture or pastures claimed, owned, or used by you in the contracted pastures known as 'Smith,

Weldon, Willison & Barbee Pasture Company's Pastur
within ten days from this notice and order; and, upon failur
on your part to obey this order, the same will be enforced b
the proper officers. Witness my hand and seal the date an
year above mentioned. Jos. Mingo, Judge Coweta Distric
M. N." Fourth. Affidavit of Arley Davis, captain
Indian Light Horse Company, to the effect that he execute
an order from N. B. Childers, judge of Coweta district,
cut a certain fence built in the Smith, Willison Weldon
Barbee pasture, in the Creek Nation, and built by Georg
Shannon contrary to the laws of the Muscogee Natio
Order given June 1, 1893. Fifth. An order of L. C. Perr
man, principal chief, as follows: "Executive Office, M.
May 3, 1895. Messrs. Thomas Grayson and Georg
Shannon: I am in receipt of a letter from A. P. McKello
and another from T. J. Adams, stating that the pasture
dispute between you and the Smith, Willison, Weldon
Barbee Pasture Company had been decided in the Cowe
district to be the property of said Smith, Willison, Weld
& Barbee Pasture Company. A certified copy of the de
sion of said court, dated May 23, 1895, in confirmation of t
above-mentioned statements, has been submitted to th
office. In view of the above showing, which I consid
reliable and conclusive, I am again compelled to cancel t
Shannon & Nixon pasture contract, and to declare the san
to be null and void. Witness my hand and seal of t
Muscogee Nation, the date first above written. L.
Perryman, Prin. Chief, M. N."

The appellees' answer attacked upon various groun
the validity of the lease made by the principal chief of t
Creek Nation to appellants, and averred that in June, 189
before the passage of the pasture law of 1892, Richard Nixc
a Creek citizen, began to improve the pasture in dispute, a
was entitled to hold the same under what is known as t
"Mile-Square Pasture Law" of the Creek Nation; that in 18

leased the same for seven years to Shannon, and sold his versionary interest to the defendant Thomas Grayson. hey denied that the Coweta District Court ever decided at the pasture in dispute belonged to appellants, or any of em, and alleged that there was no such record, and that e pretended record filed was made and procured by fraud, d is insufficient to support the allegation of a former deci- n in behalf of appellants. They denied that the Creek urt had jurisdiction of the case. They alleged that the der of Judge N. B. Childers set out above was not directed ainst them, but was directed against appellants. They erred that Joseph Mingo, judge of the Coweta district, lined to hear the case presented to him by George annon, but dismissed the same without a hearing. They ered the affidavit of N. B. Childers, signed by his mark, the effect that the order signed by him, set out above, was ected against appellants; that, upon leaving the bench, he, counsel, brought the second suit for appellee Shannon in Creek Court; that in that suit defendants objected to the sdiction, because Shannon was an intermarried citizen, because the amount in controversy exceeded $100; that ge Mingo dismissed the case on the ground that he had no sdiction, and declined to hear the same; that he refused dicate upon which ground he held he had no jurisdiction. davits of others were offered to the same effect. Appel- offered in evidence the lease from the principal chief to nnon & Nixon, and also the receipt showing the payment ent to the Nation by them, and other evidence not deem- material to be stated. The court below awarded appel- s a preliminary injunction, but upon final hearing dis- ed the same, from which order this appeal is prosecuted.

*Stuart, Gordon & Hailey, Marcum & Fears,* and *Hutch- & English,* for appellants.

The injury is irreparable when the property of th
plaintiff is rendered wholly useless for his purpose. Unles
the defendant is enjoined, the trespass would continue to th
expiration of the license. McPike vs West, 71 Mo. 901;
Beach on Injunctions, § 35; Dudley vs Hurst, 8 Atl. 90
When a trespass is continuous, an injunction is the prop
remedy, as remedy at law would have necessitated a multipl
city of suits. Wheelock vs Noonan, 15 N. E. 413; 1 Beach o
Injunctions, § 523; Ellis vs Wren, 1 S. W. 440; Ellsworth
Hale, 33 Ark. 638; Tautlinger vs Sullivan, 45 N. W. 76
Shafer vs Stull, 48 N. W. 882; Mills vs New Orleans Seed Co
4 So. 298. The action of ejectment in such a case does n
afford adequate relief and is not the proper remedy. Oolaga
Coal Co. vs McCaleb, 68 Fed. 86; 15 C. C. A. 270; U. S.
Cattle Co., 33 Fed. 323; U. S. vs Ranch Co., 26 Fed. 218;
Pom. Eq. Jur. 1357 and note.

*C. W. Pasco* and *Geo. E. Nelson*, for appellees.

An injunction will not be granted to disturb the po
session of one in possession when the title to land is in di
pute. 2 Beach on Injunctions, § 998; Erie R. R. Co. vs Del
ware R. R. Co., 21 N. J. Eq. 183. Courts of Equity will n
restrain trespasses by injunction when there is an adequa
remedy at law, and never, when the title is in dispute.
Beach on Injunctions, § § 1125, 1126; Carney vs Hadley,
So. 4; Rend vs Venture Oil Co., 48 Fed. 248. Injunction w
not issue for repeated trespass where the law affords
adequate remedy, unless the acts complained of are in tl
nature of a private nuisance. 2 Beach on Injunctions, § 112
To prevent multiciplicity of suits by injunction, the plaint
must first have his title adjudicated at law. 2 Beach
Injunctions, § 1130; 1 Pom. Eq. Jur., § 252. And the trespa
must be continuous and general and not limited. 2 Beach
Injunctions, § 1131, and note. Miller vs Burkett, 132 In
469. And will not be granted where the title is purely leg

Beach on Injunctions, § 1164 and cases cited. The bill praying for an injunction to restrain trespass must state. acts showing ground for equitable relief. 2 Beach on Injunctions, § 1166.

2. The act of Chief Perryman in leasing the pasture to appellants was ultra vires, and done under mistake. Errors committed by officers in a matter of law, with respect to land grants may be corrected by the courts and the proper relief granted. Johnson vs Townsley, 13 Wall. 72; Warren vs VanBrunt, 19 Wall. 646; Shepley vs Cowan, 91 U. S. 330; Danforth vs Moracal, 84 Ill. 456; Bird vs Ward, 4 A. D. 507; Creek Laws, 1893, § 344.

LEWIS, J. (after stating the facts). Construing section 905, Rev. St., U. S., it is held by the United States Circuit Court of appeals for the Eighth circuit that the proceedings and judgments of the courts of the Cherokee and Creek Nations are upon the same footing, and entitled to the same faith and credit, as the proceedings and judgments of the courts of the territories of the Union. Mehlin vs Ice, 5 C. C. A. 403, 56 Fed. 19; Davison vs Gibson, 12 U. S. App. 4, 5 C. C. A. 543, and 56 Fed. 443; Exendine vs Pore, 6 C. C. A. 112, 56 Fed. 777; Standley vs Roberts, 8 C. C. A. 305, 56 Fed. 836. These decisions are supported by the authority of Mackey vs Coxe,. 18 How. 100. The judgments of the courts of the territories, by the terms of the statute, stand on the same footing as the judgments of the courts of the states. In fixing the scope and extent of section 905, the Supreme Court has declared that, in a collateral attack upon a judgment of the courts named therein, it is of no avail to show that there are errors in the record relied upon, unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power. Scotland Co. vs Hill, 132 U. S. 107, 10 Sup. Ct. 26; Draper vs Reynolds, 10 Wall. 308. The record of a judg-

mant rendered in one state may be contradicted, in a collateral attack in another state, as to the facts necessary to give the court jurisdiction; and, if it be shown that such facts did not exist, the record will be regarded as a nullity, notwithstanding it may be recited that they did exist. Want of jurisdiction may be shown either as to the subject-matter or as to the person, or, in proceedings in rem, as to the thing Thompson vs Whitman, 18 Wall. 451. A judgment of a state court or of courts of the United States cannot be impeached collaterally in courts of other states or of the United States for errors of law or practice. Town of Lyons vs Munson 99 U. S. 684; Cooper vs Reynolds, 10 Wall. 308; Marchand vs Frellsen, 105 U. S. 423; Trust Co. vs Seasongood, 130 U. S 482, 9 Sup. Ct. 575. A judgment of a state court may not be impeached collaterally in the court of another state, or in a United States Court, on the ground of fraud. Christmas vs Russell, 5 Wall. 290; Maxwell vs Stewart, 21 Wall. 71; Ids: 22 Wall. 77; Nougue vs Clapp, 101 U. S. 551; Graham vs Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009; Simmons vs Saul 138 U. S. 439, 11 Sup. Ct. 369; Randolph vs King, 2 Bond 104, Fed. Cas. No. 11,560; Amory vs Amory, 3 Biss. 266, Fed Cas. No. 334. The facts and questions of law decided by judgment are generally considered res adjudicata. Thus the construction of a state constitution or a state statute, the decision of the court as to the character of the judgment whether interlocutory or final, and the finding of the court as to fraud or testamentary capacity, are conclusive. Mill vs Duryea, 7 Cranch, 481; Hampton vs McConnell, 3 Wheat 234; Board of Public Works vs Columbia College, 17 Wal. 521. A decree dismissing a complaint entitling the defendant to recover costs, set up as a plea in bar, is conclusive, if dismissal is not, in direct terms, "without prejudice." Lyo vs Manufacturing Co., 125 U. S. 698, 8 Sup. Ct. 1024.

In applying these rules to the case in hand, the first question that arises is, has the Creek Court rendered a judg

ment determining the rights of the parties as to the matters now in controversy? An order from N. B. Childers, judge of the Coweta district, Creek Nation, commanding the light horsemen of the district to destroy certain fences, is in evidence. It is shown that, pursuant to this order, the fences claimed by appellee Shannon upon the land in controversy were cut by the Indian officer. Whether the order of Judge Childers was the result of a hearing; whether it is a judgment, or a writ of execution based upon a judgment, of a court,—is not shown by any record in proof. We think this order cannot be regarded as a judgment to which the faith and credit commanded by the statute must be given. But, subsequent to its issuance, appellee Shannon filed suit against appellants in the Creek Court, Coweta district; and that court, upon hearing (Judge Mingo presiding,) with both parties present and represented by counsel, entered a judgment dismissing the case upon the finding (clearly made and expressed) that the same had been legally and properly brought before Judge N. B. Childers and adjudicated, and the judgment of the court enforced, and the wire fences built and claimed by said Shannon cut down by the light horsemen of the district. Upon the day of the rendition of this judgment, appellee Shannon was officially notified by the judge rendering the same to take down and remove all wire fences inclosing any pasture or pastures claimed, owned, or used by him in the contracted pasture known as the "Smith, Willison, Weldon & Barbee Pasture Company's pasture," under penalty of having said order enforced after ___ days by the proper authorities. In recognition of the judgment rendered by Judge Mingo, the principal chief of the nation canceled the lease he had heretofore made to appellees Shannon & Nixon. The judgment of Judge Mingo, tested by the requirements of our law, is informal and defective. It is, however, sufficient to show a dismissal of the suit because of a former adjudication between the parties to

the latter proceedings, and that the same was adverse to Shannon, and resulted in the cutting of his fences. The notice following is evidently based upon the judgment found to have been rendered by Judge. Childers. True, it is claimed that Judge Childers never rendered a judgment, but that is immaterial in this controversy. Judge Mingo found that he had rendered judgment, and for that reason he dismissed the case, and gave a notice in way of enforcement of the judgment he found to exist. The finding by Judge Mingo that a judgment adjudicating the rights of the parties had been made, and of the effect thereof, is binding upon this court, and is as effectual as if such judgment had in fact been rendered. A judgment of dismissal may be pleaded, and the findings of fact upon which it is based cannot be inquired into in a collateral proceeding.

Much of the testimony in the record goes to show that the lease from the Creek Nation under which appellant claim is illegal because not made in compliance with the Creek laws upon the subject, and because the grant was in **Judgment of Creek Court. Conclusive.** excess of the authority of the principal chief. The judgment of the Creek court precludes our consideration of these questions. We cannot review errors of law or practice in such courts, when their judgments are presented to us unless such errors are jurisdictional. Cornells vs Shannon 27 U. S. App. 329, 11 C. C. A. 465, and 63 Fed. 305.

It is further urged that the judgment of the Creek court is in excess of its jurisdiction, because the amount in controversy exceeds $100, the limit of the jurisdiction of the **Jurisdiction of Court—Presumption in favor.** District Courts of the Creek Nation. It is enough to say this that the record does not show what the value of the premises in controversy was at the time of the rendition of the judgment by Judge Mingo in the Creek court, and the presumption is in favor of the jurisdiction.

We have considered long whether we should regard the proceedings before Judge Mingo, with their patent

defects of form, or whether we should on this account disregard them entirely. In courts sometimes presided over by judges unable to write, technical correctness in procedure and in judgment cannot be expected. To require it is practically to annul all their proceedings and decrees. To comply with the statute, and to give faith and credit to the judgments of these tribunals, we must look beyond the form, and enforce the manifest intent, gathered broadly from the entire proceedings. This we have done in the present case, believing it to be in accord with the spirit of the decisions of the Circuit Court of Appeals, and further illustrated in Talton vs Mayes (decided May 18, 1896) 16 Sup. Ct. 986. We conclude that appellee Shannon, having invoked the jurisdiction of the Creek Court, is bound in this action by its judgment therein rendered. Cornells vs Shannon, supra. As to the other appellee, Thomas Grayson, his claim to the premises in controversy rests upon a sale of the reversionary interest of Richard Nixon, Shannon's lessor, upon the determination of Shannon's lease. The sale was not upon a consideration paid or fixed by agreement, and therefore passed no right. It is suggested that by the lease from appellants Barbee, Willison & Weldon to the appellants Edwards Bros., the appellants first mentioned were not entitled to the possession of the premises at the time of the institution of the suit, but their lessees were so entitled, and that, therefore, the parties first named cannot maintain this action. In 1 Tayl. Landl. & Ten. 190, it is said: "If any one interferes with his tenants so far as to disturb their enjoyment, and thereby cause loss of rent or other damage, the landlord may have an action; and, if the disturbance is continued, he may from time to time bring a fresh action." This statement is supported by the decisions in Shadwell vs Hutchinson, 2 Barn. & Adol. 33, and in Aldridge vs Stuyvest, 1 Hall, 210. In the first case, tried before Chief Justice Tenterden, it is held that it is no defense to an action for

*Margin notes:*

Judgment of Creek Court — Intent to be enforced.

Sale without consideration —No right passes.

obstructing ancient lights that the nuisance merely affects
the plaintiff's rights as reversioner, and that he has already,
in a former action, recovered against the defendant for the
same obstruction.    In the last case it was held that an action
lies in favor of a landlord against any person who so wrong-
fully and maliciously disturbs his tenants that they abandon
his premises, and the landlord thereby loses his rent.    No
reason is perceived why the rule should not be the same if
the disturbance does not cause the tenants to leave the pre-
mises, but results in damage for which the landlord must
respond to them.    In this case it alleged that the tenants,
Edward Bros., had rented the premises for the purposes of
pasturing cattle, and that they had a large number of cattle
in the pasture, and that by the trespass of the appellees
their possession was disturbed, and they were exposed to
damage.    Under these allegations, we think the landlord
had a right of action, notwithstanding the right of pos
session, under the terms of the lease, still in his tenants
Furthermore, it is well established that the landlord may
maintain actions, for the protection of his reversionary
interest, for such injuries as would, in the ordinary course o
things, continue to affect such interest after the terminatio
of the lease, whether the injury be committed by a tenant
an undertenant, or a stranger, and whether the term sha
have expired or not.    Of such actions are those for protect
ing the windows of a house, stopping up a rivulet, whereb
the timber becomes rotten, the erection of unwholesom
nuisance near the premises, undermining the foundation o
a house, cutting down trees, and the like.    Tayl. Landl.
Ten. art. 173; Lachman vs Deisch, 71 Ill. 59; Brown v
Bridges, 31 Iowa 138.    In the latter case it was decided tha

Right of
action of
reversioner.

the landlord might have an action for throwing down fenc
while the premises were in possession of a tenant; such i
jury being damage to the real estate, and therefore to th
reversionary interest.    We conclude that the appellant lan

lords in this case, under the allegations that the appellees were erecting fences upon their premises, had a right of action therefor.

The contention is further made that, if the appellants had a right of action at all, their action should have been at law. Equitable jurisdiction, in our judgment, can be sustained upon distinct grounds. It is alleged and proven that appellees were entering in and upon a portion of the premises adjudged by the Creek Court to belong to appellants, and had run a wire fence across the same, inclosing nearly 1,000 acres of said pasture, and threatened to turn their own cattle in and upon the same, and to use and graze it, to the exclusion of the appellants and their lessees. In 2 Beach, Inj. 1146, it is said: "A trespass upon real property, effected by an unlawful structure, is continuous in its nature, and gives separate, successive causes of action from time to time, barred only by the running of the statute of limitations, against the successive trespasses." This statement of the law is abundantly supported by the authorities cited by the author. The principle upon which equitable relief is granted in such cases is the avoidance of a multiplicity of suits; such multiplicity not necessarily and solely arising from the existence of a number of parties for or against whom a cause may exist, as held in Carney vs Hadley (Fla.) 14 South. 4, but arising from the necessity of bringing many and successive suits at law to obtain full redress for a continuous wrong. "Jurisdiction of equity arises by reason of the necessity of repeated actions at law to redress the owner's grievance, and .must, from the nature of the case, continue so long as that necessity exists." Galway vs Railway Co., 128 N. Y. 132, 28 N. E. 479. That this is one of the grounds upon which equity interferes to avoid a multiplicity of suits is stated by Mr. Pomeroy in his work on Equity Jurisprudence (volume 1, § 264), and is supported by an array of authorities cited by him. The rule has been acted upon

Equity. Multiplicity of suits.

in every variety of trespass.   Thus, in Iowa, where a cropper for shares turned cattle upon plaintiff's land before the crop was harvested, it was decided that the owner of the land, to avoid a multiplicity of suits, might have an injunction to prevent repeated trespass thereon without alleging irreparable injury or the insolvency of the defendant.   Tantlinger vs Sullivan, 80 Iowa, 218, 45 N. W. 765.   To the same effect was it held in that state in a case where defendant falsely claimed that there was a highway upon plaintiff's land, and repeatedly tore down his fence and passed over his premises, and threatened to continue to do so.   Ladd vs Osborne, 79 Iowa 93, 44 N. W. 235.   Of like effect, upon similar facts, is the decision in Shaffer vs Stull, 32 Neb. 94, 48 N. W. 882. An injunction was granted when a trespass already committed by a road overseer in removing obstructions from an alleged highway, which had no existence, would probably be indefinitely repeated.   Smithers vs Fitch, 82 Cal. 153, 22 Pac. 935.   And so it was held that when defendant had piled heavy boulders on plaintiff's lot, and plaintiff's only remedy at law was repeated actions for damages, injunction should be granted.   Wheelock vs Noonan, 108 N. Y. 179, 15 N. E 67.   For other applications of the rule, see, also, Slack vs Lawrence Tp. (N. J. Ch.) 19 Atl. 663; Warren Mills vs New Orleans Seed Co., 65 Miss. 391, 4 South. 298; Ellis vs Wren 84 Ky. 234, 1 S. W. 440.   It is believed further that the equitable jurisdiction should be sustained upon the ground that, under the peculiar circumstances of the case, appellant had not, at law, a remedy so plain, adequate, and complete as in equity.   Appellants had leased the land trespassed up on to Edwards Bros., who were pasturing cattle.   Unde given circumstances, appellants might become liable for con sequential damages because of Edwards Bros.' failure to en joy the leased premises.   For their trespass, appellees wer liable to respond in damages, the measure whereof migh not by any means be as comprehensive as the damages fo

which appellants might become liable to their lessees. In other words, appellants by appellees' wrong might be made liable for greater damage than they could recover. Under such circumstances the remedy at law cannot be held to be as plain, adequate, and complete as the equitable remedy. As said by the Supreme Court of the United States, it is not enough that there exists a remedy at law; it must be plain, adequate, and complete,—in other words, direct and effective, and as sufficient to the ends of justice as the remedy in equity. Boyce vs Grundy, 3 Pet. 210; Sullivan vs Railroad Co., 94 U. S. 806. So, also, it will give its aid, says that court, when the injury is of such a nature that it cannot be adequately compensated by damages at law. Parker vs Manufacturing Co., 2 Black. 544; Wylie vs Coxe, 15 How. 415. This record discloses that these litigants have been endeavoring for nearly six years to obtain at law a settlement of their controversies. Twice have they applied to the authorities of the Creek Nation, and twice to the United States Court in the Indian Territory. We think that they should not now be met with the barren formula that there is an adequate remedy at law, but that the jurisdiction and the remedies in equity are ample to give present relief, and to end this long drawn controversy. The judgment of the court below will be reversed, and here rendered for appellants, who will be granted the relief in equity prayed for.

KILGORE, J., concurs.

*Remedy at law must be adequate.*