Ernesto ALEOTTI, Appellant,

v.

WHITAKER BROTHERS BUSINESS MACHINES, INC., et al., Appellees.

No. 80–204.

District of Columbia Court of Appeals.

Argued Dec. 17, 1980.

Decided Feb. 24, 1981.

James R. Michal, Washington, D. C., with whom Benjamin W. Dulany, Washington, D. C., was on the brief, for appellant.

C. Francis Murphy, Washington, D. C., with whom S. Churchill Elmore, Washington, D. C., was on the brief, for appellees.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

Appellant is the recent purchaser of property on Missouri Avenue near Georgia Avenue of which a tiny corner, triangular in shape with an area of 103 sq. ft., and a narrow rectangular area of approximately 50 sq. ft. lie in the entrance of a driveway which provides access to the rear of the appellees' properties. Appellant purchased the lots, numbered 851 and 860, in 1979. By studious adherence to the boundary lines recorded in the plat records of the city, he erected a chain link fence around his property also encircling this tiny corner and narrow rectangle. Thus enclosed, these two small areas added little terrain or apparent utility to the bulk of appellant's holding yet so denuded the character of the driveway as to make passage awkward to some and impossible to others.

After fruitless efforts among property owners to resolve the problem, appellees brought an action in Superior Court to establish a prescriptive right to the use of the entire driveway entrance and to enjoin the construction of appellant's fence in their

right of way. *See* D.C.Code 1973 § 16–3301. The trial judge concluded as fact that the narrow rectangle, lot 851, was established as a private alley in 1875 and has since been conveyed as such in the records of the city.* He also found that the rectangle of lot 851 and the tiny triangular corner of lot 860, all of which the appellant had attempted to annex from the driveway by his fence, had been openly, notoriously, continuously, and exclusively used as a driveway by appellees and their customers, suppliers, and employees for a period in excess of fifteen years. Consequently, the trial judge ruled that this use had vested in the appellees a prescriptive easement over the area for use as a driveway to their properties. He ordered appellant to remove the fence and refrain from obstructing the easement.

Appellant asserts two arguments for reversal but has failed to persuade the court that the second argument is not dependent on the first to sustain reversal. In his first argument, appellant contends that factual findings of the court are clearly erroneous, the proper view of which would establish that appellees' use of the land was permissive from 1959, thus defeating the claim.

In his second argument, pointing out the fact that his predecessors in fee have leased the property almost continuously since 1948, appellant asks this court to adopt a rule that the statutory period required for the establishment of an easement shall not run against a lessor while his tenant is on the property.

Since the record shows that appellant's predecessor in fee was not in fact a lessor at the moment adversity was initiated, accepting this rule of law would not aid appellant's cause. And since the trial judge's critical finding that the use of the property was adverse in 1959 is supported by evidence, we affirm.

I

The pivotal factual finding which appellant asserts is clearly erroneous requires our attention to events which occurred during 1959 when a guardrail barrier was constructed on appellant's side of the driveway entrance as it now exists. A prior owner of lot 860 had leased the property to Texaco Corporation under an agreement signed on August 28, 1957. According to the agreement, Texaco would take possession as a tenant once construction of a suitable gas station was completed on the property. During construction, the work crew began to stake out a line for the guardrail which extended towards the recorded boundary of lot 851 in the middle of the drive and thus would have cut off the driveway and enclosed all of the narrow rectangle of lot 851 and the triangular section of lot 860, just as appellant later did in 1979. James Ewin, one in possession of neighboring property, immediately objected and subsequently the line was moved back and the guardrail barrier was constructed so to return both lot 851 and the 103 sq. ft. triangular portion of lot 860 to the driveway entrance. This condition appears on a survey prepared by the District of Columbia Surveyor in October of 1959.

▇▇▇ Appellant argues that Mr. Ewin's testimony shows that appellees' use was permissive from that day on, in that Texaco moved the guardrail location as a neighborly accommodation. He cites *Umhau v. Bazzuro*, 76 U.S.App.D.C. 394, 133 F.2d 356 (1942), as an example of such neighborliness. The determination of adversity, however, focuses essentially on factual manifestations of claimed ownership. As such, our standard of review as to the court's findings is limited by D.C.Code 1973, § 17–305(a), to those findings which are clearly erroneous and without evidence to support them. *See Nelson-Bey v. Robinson*, D.C. App., 408 A.2d 999, 1001–02 (1979). Adversity need not be asserted by an oral claim of right. *See Brumaugh v. Gompers*, 50 U.S. App.D.C. 130, 269 F. 472 (1920). *Umhau* itself correctly states that adverse use must be established by circumstances which reflect a claim of right to a reasonably attentive owner. *See also Kogod v. Cogito*, 91 U.S.App.D.C. 284, 200 F.2d 743 (1952).

---

* Appellant does not contest the court's decision regarding lot 851.

■ Mr. Ewin's testimony hardly points to only one factual conclusion as appellant contends. "Well, I wasn't asking permission. I wouldn't say that I was demanding," said Mr. Ewin. Coupled with the other evidence before the trial court, this testimony establishes circumstances from which it was reasonable to infer the necessary claim of right. Mere acquiescence is not permission. Others testified to the use of the driveway entrance by adjoining landowners, their tenants, invitees, and employees. One of the appellees regularly repaved the driveway. We hold that the trial judge's conclusion is supported by the evidence.

Consequently, finding that an adverse use was claimed in 1959 and continued from that date uninterrupted until appellant's erection of the fence in 1979, we need not examine the court's factual conclusions regarding earlier periods. The fifteen years of use necessary for the prescriptive easement is established. *See* D.C.Code 1973, § 12–301(1).

## II

Lot 860 has been leased almost continuously by appellant's predecessors in title since at least 1948. Appellant urges us to hold that landlords—like infants, seafarers, lunatics, and inmates—should be immunized from the period of prescriptive use running against them while they are not in actual possession of the property. *See Sharon v. Tucker,* 144 U.S. 533, 541, 12 S.Ct. 720, 721, 36 L.Ed. 532 (1892) (appeal from the Supreme Court of the District of Columbia); D.C.Code 1973, § 12–302(b). Appellant cites an 1877 Wisconsin case, *Pentland v. Keep,* 41 Wis. 490 (1877), and a Connecticut case as representing jurisdictions which accept this rule of law. *See South Norwalk Lodge v. Palco Hats, Inc.,* 140 Conn. 370, 100 A.2d 735 (1953). The Wisconsin case, however, erroneously interprets the authority upon which it most relies while the Connecticut case maintains a contrary result. In both instances, it is admitted that the rule applies only where the landlord is not permitted by law to bring an action against the wrongdoer and is thus "disabled" from protecting his property.

■ Such is not the case in the District of Columbia. A landlord may bring an action to remedy an injury to his reversionary interest in the property which a potentially prescriptive use causes. An adverse user is capable of establishing an easement against a landlord, thus permanently depriving him of the use of a portion of his property. *See Wilkes v. Elliott,* 5 D.C. 611 (5 Cranch) (1839). It follows that the landlord must be able to assert his title against such potential injury to his reversion. *See, e. g., Barbee v. Shannon,* 1 Ind.T. 199, 40 S.W. 584 (1897); *Lund v. New Bedford,* 121 Mass. 286 (1876); *Holdridge v. Burlington,* 32 A.D.2d 581, 299 N.Y.S.2d 340 (1969); *University of Vermont and State Agricultural College v. Ward,* 104 Vt. 239, 158 A. 773, 784 (1932) (damages not limited by leasehold); 3 Powell on Real Property ¶ 413, at 34–107 (1979 ed.) *See also Maiatico v. Hot Shoppes, Inc.,* 109 U.S.App.D.C. 310, 287 F.2d 349 (1961); *Powers v. Coates,* D.C. App., 203 A.2d 425 (1964).

■ Actual title absent actual possession is sufficient to maintain an action against one asserting an adverse use. *Greenleaf's Lessee v. Birth,* 31 U.S. 302, 8 L.Ed. 406 (1832); *Bursey v. Lyon,* 30 App.D.C. 597 (1908); *Chesapeake Beach Railway v. Washington Potomac & Chesapeake Railroad,* 23 App.D.C. 587 (1904); *Anderson v. Reid,* 10 App.D.C. 426 (1897); *Petty v. Petty,* 70 Idaho 473, 223 P.2d 158 (1950); *McAuliffe v. Lerch,* 189 Md. 672, 674, 57 A.2d 329, 330 (1948) (remedy is ejectment for one with title).

■ Against the landlord's title, the wrongdoer may only assert the strength of his own claim and may not rely on the existence of a leasehold estate in another. *See Smith v. Sullivan,* 20 App.D.C. 553 (1902); *Bradshaw v. Ashley,* 14 App.D.C. 485, *aff'd,* 180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423 (1899).

Any other rule would condone a lack of vigilance on the part of the landlord in overseeing his property and would force

upon tenants the protection of their contracted-for demise. The evils of absentee landlordism are partly what the doctrine of adverse possession is meant to avoid.

██ Furthermore, the rule proposed does not apply when the landlord was in possession at the time the adverse use was initiated, or comes into possession due to the lapse of a lease *Reimer v. Stuber*, 20 Pa. 458 (1859); *see also Boyce v. Missouri Pacific Railroad*, 168 Mo. 583, 68 S.W. 920 (1902); Restatement of the Law of Property § 226 (1936). During the time when the guardrail was constructed in 1959, appellant's predecessor was in actual possession of the property because the lease did not become effective until the construction of the station was completed.

Therefore, the decision of the trial court is

*Affirmed.*